Tate AKIN f/k/a Tate Olsen d/b/a Harvest Moon Café & Bakery, Appellant,

v.

SANTA CLARA LAND COMPANY, LTD., Appellee.

No. 04–99–00629–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 2000.

**338**

Mark Zuniga, Law Offices of R. David Fritsche, San Antonio, R. David Fritsche, Law Offices of R. David Fritsche, San Antonio, for Appellant.

Gay Gueringer, Richie & Gueringer, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PHIL HARDBERGER, Chief Justice.

Tate Akin (formerly known as Tate Olsen) d/b/a Harvest Moon Café and Bakery ("Akin") appeals a take-nothing judgment rendered in favor of Santa Clara Land Company, Ltd. ("Santa Clara"). Akin asserts ten points of error in her brief, contending: (1) the trial court erred in striking her expert witness; (2) the trial court erred in granting partial summary judgment with regard to her claims for violations of the Deceptive Trade Practices Act, negligence, defamation, and exemplary damages; (3) the evidence was insufficient to support the jury's verdict with regard to Akin's section 9.504 and conversion claims;

and (4) the trial court erred in omitting Akin's requested jury questions, definition and instruction. We overrule each of these points of error and affirm the trial court's judgment.

### BACKGROUND

Akin leased space from Santa Clara pursuant to a written lease agreement. The lease term commenced on June 1, 1995. In March of 1996, Santa Clara exercised its landlord's lien and locked Akin out of the leased premises. Akin sued Santa Clara for numerous causes of action.

On January 8, 1999, the trial court granted a partial summary judgment in favor of Santa Clara with regard to Akin's DPTA and negligence claims. The trial court denied Santa Clara's motion for summary judgment with regard to Akin's conversion claim.

On March 15, 1999, the trial court granted a second partial summary judgment in favor of Santa Clara with regard to: (1) Akin's claim for intentional infliction of emotional distress; and (2) Santa Clara's affirmative defense that Akin breached the lease agreement. The trial court denied Santa Clara's motion for summary judgment with regard to Akin's breach of contract claim.

On May 4, 1999, Akin filed an amended petition, which eliminated several of the causes of action previously pled. The amended petition only alleged claims for violation of section 9.504 of the Texas Business and Commerce Code, conversion, breach of contract, defamation, and breach of fiduciary duty.

On June 4, 1999, the trial court granted a third partial summary judgment in favor of Santa Clara with regard to Akin's claims for defamation and punitive damages.

Akin's remaining claims were tried to a jury. The jury found that Santa Clara did not breach the lease agreement, did not convert Akin's personal property, and did not fail to conduct a commercially reasonable sale. The trial court entered a final take-nothing judgment against Akin, and Akin timely filed this appeal.

## EXCLUSION OF EXPERT

■ In her first point of error, Akin claims that the trial court erred in striking Robert Harms Bliss as an expert witness. Santa Clara responds that Akin failed to preserve error on this point by failing to present an offer of proof. Assuming error was preserved, Santa Clara further responds that the trial court properly struck the expert.

■ Error is not preserved with regard to the exclusion of evidence unless the substance of the evidence is made known to the court by offer, or was apparent from the context within the questions were asked. TEX.R.EVID. 103(a)(2). The failure to make an offer of proof containing a summary of the excluded witness's intended testimony waives any complaint about the exclusion of the evidence on appeal. *See Ludlow v. DeBerry,* 959 S.W.2d 265, 270 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Sims v. Brackett,* 885 S.W.2d 450, 453 (Tex.App.—Corpus Christi 1994, writ denied). Our record does not contain an offer of proof as to what Bliss's testimony would have been. However, it is apparent from the record of the hearing on the motion to strike that the trial court believed Bliss was being offered to testify regarding his interpretation of the terms of the lease agreement.

■ Assuming the discussion at the hearing was sufficient to preserve error with regard to Bliss's inability to testify regarding his interpretation of the lease agreement, we must determine whether the trial court abused its discretion in excluding the testimony. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *See id.* at 754. In this case, Bliss's testimony was offered to interpret the terms of the lease agreement; however, the construction or interpretation of an unambiguous contract is a question of law for the court. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Expert testimony regarding the legal interpretation of an unambiguous agreement encroaches upon the trial court's province to determine the correct legal interpretation. *See Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 134 (Tex.App.—Corpus Christi 1999, pet. denied). The trial court did not abuse its discretion in excluding Bliss's interpretation of the lease agreement. Akin's first point of error is overruled.

## DTPA AND NEGLIGENCE CLAIMS

■ In her second and third points of error, Akin contends that the trial court erred in granting partial summary judgment in favor of Santa Clara with regard to her DTPA and negligence claims. Santa Clara responds that Akin waived any error by the trial court when she amended her pleadings after the partial summary judgments were granted and abandoned her DTPA and negligence claims. We agree. By amending her pleading and eliminating the DTPA and negligence references, Akin abandoned those claims. *See Farmer v. Ben E. Keith Co.,* 919 S.W.2d 171, 173 (Tex.App.—Fort Worth 1996, no writ); *Direkly v. ARA Devcon, Inc.,* 866 S.W.2d 652, 655 (Tex.App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Radelow–Gittens Real Property Mgmt. v. Pamex Foods,* 735 S.W.2d 558, 559 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Dolenz v. All Saints Episcopal Hosp.,* 638 S.W.2d 141, 142 (Tex.App.— Fort Worth 1982, writ ref'd n.r.e.). Akin's second and third points of error are overruled.

## Defamation

In her fourth point of error, Akin contends that the trial court erroneously granted the partial summary judgment in Santa Clara's favor with regard to her defamation claim. Santa Clara responds that the summary judgment was properly granted because the claim was barred by limitations.

Although Akin attached an affidavit to her summary judgment response contending various defamatory statements were continually made about her, Akin's pleading was amended in response to special exceptions to state: "The defamatory statements set forth in Plaintiff's deposition are the defamatory statements for which Plaintiff sues." Therefore, we can only consider those statements set forth in Akin's deposition as the basis for her defamation claim.

In Akin's deposition, she mentioned two disparaging statements that she learned had been made about her in September or October of 1996. Akin also referred to a conversation she had with Glenn Creed in November of 1997, but Akin could not remember any specific statement that Creed told her a representative of Santa Clara had made about her. Akin did remember Creed telling her that her version of the events that had transpired was very different from what he heard from Santa Clara. Akin further stated that what Creed had been told was damaging and hurtful. Finally, Akin referred to a conversation she had with Carolyn Nelson in November of 1998. Nelson told her that "word was on the street that [Akin] did not pay rent." Akin admitted she was uncertain that Nelson had heard the disparaging statement about her from a representative of Santa Clara.

■ To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a false statement about the plaintiff; (2) that was defamatory; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). In this case, Akin's pleadings allege that those defamatory statements mentioned in her deposition were the defamatory statements for which she was suing. The only false statements published by Santa Clara that Akin could recall at her deposition were the statements she learned had been made in September or October of 1996. Akin was unable to recall a specific statement published to Creed, and Nelson's statement in November of 1998 was based on "word on the street," which may not have come from Santa Clara.

■ A defendant moving for summary judgment on the basis of limitations bears the burden of showing that the claim against it is barred by limitations as a matter of law. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Ellert v. Lutz*, 930 S.W.2d 152, 156 (Tex.App.—Dallas 1996, no writ). A defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered the nature of the injury. *See Burns*, 786 S.W.2d at 267; *Ellert*, 930 S.W.2d at 156.

■ Defamation has a one-year limitations period. Tex.Civ.Prac. & Rem. Code Ann. § 16.002(a) (Vernon Supp.2000). A cause of action for defamation accrues when the injured party learned of, or in the exercise of reasonable diligence should have learned of, the defamatory communication. *See Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976). Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise. *See Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Fisher v. Beach*, 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ). Akin filed her original

petition alleging her defamation claim on December 19, 1997. Therefore, limitations barred any distinct publication of a defamatory statement that Akin learned of (or should have learned of) before December 19, 1996.

Although Akin made a vague reference in her deposition to conversations she had in November of 1997 and November of 1998, she was unable to recall any defamatory statement made on those dates that would be a basis for her defamation claim. The only two defamatory statements that Akin could recall being made in September or October of 1996 were barred by limitations. Akin's fourth point of error is overruled.

### EXEMPLARY DAMAGES

In her fifth point of error, Akin complains that the trial court erred in granting a "no evidence" partial summary judgment with respect to her claim for exemplary damages. Akin alleged that she was entitled to punitive damages based on her claims for conversion, violations of section 9.504 and 9.507 of the Texas Business and Commerce Code, breach of contract, defamation, and breach of fiduciary duty.

■ Under Rule 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R.CIV.P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* In reviewing a no-evidence motion, we apply the same legal sufficiency standard of review as is applied to a directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). We must consider all the record evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Id.* A no-evidence summary judgment is properly granted if the respondent fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the respondent's case. *Id.*

■ Neither a breach of contract nor a violation of section 9.504 or 9.507 will support an award of punitive damages; the existence of an independent tort with accompanying actual damages must be established. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex.1995); *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex.1987); *First City Bank–Farmers Branch v. Guex*, 659 S.W.2d 734, 741 (Tex.App.—Dallas 1983), *aff'd*, 677 S.W.2d 25 (Tex.1984). Because Akin's allegation of breach of fiduciary duty was premised on a violation of section 9.504 and 9.507, Akin's claims for breach of contract, violations of section 9 .504 and 9.507, and breach of fiduciary duty could not independently support an award of punitive damages. Therefore, the only claims that the trial court was required to consider in determining whether any evidence had been presented to support a punitive damages award were Akin's claims for conversion and defamation.

■ To recover exemplary damages for conversion, Akin was required to produce some evidence that Santa Clara acted with malice. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex.1997). To establish malicious conversion, Akin was required to show more than bad faith and wrongful conduct; Akin was required to show that the wrongful act was of a wanton and malicious nature. *Id.* Similarly, Akin was required to show malice in order to recover punitive damages with respect to her defamation claim. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984). Actual malice with regard to a defamatory statement embraces a higher level of culpability than mere ill will or animosity. Negligence, failure to investigate the truth or falsity of the statements prior to publication, or failure to act as a reasonable prudent person is insufficient

to support a finding of malice. *See Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 924 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ In Akin's response to Santa Clara's motion, Akin claimed that Santa Clara was malicious in securing the premises before determining that Akin owned the items of personal property that had been removed from the premises. In addition, Akin claimed that the procedure by which Santa Clara conducted the public sale was unreasonable or defective. Akin further claimed that Santa Clara was malicious in allowing a new tenant to use certain items of personal property before the public sale and for giving away perishable food items without notice to Akin. Attached to Akin's response were deposition transcripts and other documentary evidence to support that the events that Akin alleged to be malicious had occurred.

None of the events Akin alleged to have occurred relate to her claim that Santa Clara made defamatory statements about her; therefore, Akin did not present any evidence to support a punitive damages award for defamation. In addition, although the evidence attached to Akin's response showed that the events she was alleging to be malicious occurred, the evidence did not show those acts were of a wanton and malicious nature. Akin's fifth point of error is overruled.

LEGAL AND FACTUAL SUFFICIENCY

In her sixth and seventh points of error, Akin complains of the sufficiency of the evidence to support the jury's verdict in favor of Santa Clara with regard to Akin's claim under section 9.504. In her eighth and ninth points of error, Akin complains of the sufficiency of the evidence to support the jury's verdict in favor of Santa Clara with regard to Akin's conversion claim. Santa Clara responds that the evidence was sufficient to support the jury's verdict.

A. Standard of Review

■ When the party with the burden of proof challenges the legal sufficiency to support the jury's failure to find in its favor, it must show that no evidence supports the failure to find and the evidence establishes the desired finding as a matter of law. *Merckling v. Curtis*, 911 S.W.2d 759, 763 (Tex.App.—Houston [1st Dist.] 1995, writ denied). In conducting our review, we must first determine that no evidence supports the finding based on an examination of the record for evidence supporting the finding, while ignoring all evidence to the contrary. *See id.* If there is no evidence to support the finding, then we examine the entire record to determine whether the contrary proposition is established as a matter of law. *See id.*

■ Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *Id.* In reviewing a factual sufficiency complaint, we must examine all of the evidence, and we only set aside the verdict if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Id.* We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Id.*

B. Section 9.504 Claim

The following question was submitted to the jury with respect to Akin's claimed violation of section 9.504:

Did Santa Clara fail to conduct a commercially reasonable sale of the collateral?

By "commercially reasonable" is meant a sale conducted as would have been conducted by any ordinary and prudent

businessman operating under the same or similar circumstances. To find that Santa Clara disposed of the collateral in a commercially reasonable manner, you must determine that the method, manner, time, place and terms of the sale or disposition of the collateral was commercially reasonable given the particular facts and circumstances.

The fact that a better price could have been obtained at a different time or in a different method from the method selected by Santa Clara is not of itself sufficient to establish that a sale was not made in a commercially reasonable manner.

The jury answered "no" to the question.

■ Akin contends evidence of three circumstances relating to the sale proved that the sale failed to meet the requirements of commercial reasonableness. First, Akin claims that the amount of time between the date of seizure, March 19, 1996, and the date of the purported sale, February 20, 1997, was unreasonable. However, the attorney who assisted Santa Clara with the sale, Christopher Clark, testified that the delay was a result of the continuing negotiations between the parties. In addition, Graham Weston, the president of the general partner of the entity that owned the building containing the leased premises, and Mona Ghawi, the building manager, both testified about the ongoing negotiations. Correspondence evidencing those negotiations was also introduced into evidence. After the negotiations proved unsuccessful, Christopher Clark testified that the sale was delayed during the time required to notify the Internal Revenue Service of the intended sale, and the sale proceeded shortly after. Based on this evidence, we overrule Akin's contention that the evidence was insufficient to show that the timing of the sale was commercially unreasonable.

■ Akin also claims that the notice of sale was defective in that it failed to give a full and accurate description of the property to be sold and failed to give a date or time certain for the sale. Christopher Clark testified that the procedures used were commercially reasonable. In addition, the notice of sale was introduced into evidence. The jury heard testimony from Akin describing the personal property she believed she owned, which the jury was able to compare to the description on the notice. Clark described the manner in which he solicited bids and testified that several potential bidders had inquired and inspected the property. Clark stated that he did not receive any bids after the deadline on February 19, 1997. The notice stated that the foreclosure would occur at 5:00 p.m. on February 20, 1997. Clark testified that he only received two bids. One bid was for $1,157, and the other bid, by Santa Clara, was for $10,000. The Bill of Sale evidencing the foreclosure was prepared on or about February 20, 1997, and was executed to be effective as of February 20, 1997. Based on this evidence, we overrule Akin's contention that the notice of sale was defective.

■ Akin finally claims that she received no notice of the sale. Evidence of attempted service of the notice by certified mail to five different addresses was introduced into evidence. In addition, Clark testified that he would have sent a copy of the notice to Akin's attorney. The lease agreement provides, "Any notice or document required to be delivered hereunder shall be deemed to be delivered if actually received and whether or not received when deposited in the United States mail, postage prepaid, certified or registered mail (with or without return receipt requested), addressed to the parties hereto at the respective addresses set forth in the Basic Lease information or at such other address as either of said parties have theretofore specified by written notice delivered in accordance herewith." One of the addresses to which the notice was sent was Akin's address set forth in the Basic Lease information. In addition, the notice was sent to every other address Santa Clara's attorney could locate for Akin. Based on

this evidence, we overrule Akin's contention that she failed to receive notice of the sale.

Akin's sixth and seventh points of error are overruled.

## C. Conversion Claim

In her eighth and ninth points of error, Akin challenges the sufficiency of the evidence to support the jury's verdict in favor of Santa Clara with respect to Akin's conversion claim. Akin claims Santa Clara converted her personal property after its seizure by giving away items of personal property, selling items of personal property without notice, and failing to return exempt property after she instituted litigation.

■■■ Conversion is established by proving: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property. *Ojeda v. Wal–Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex.App.—San Antonio 1997, pet. denied). Santa Clara contends that there was no evidence of conversion because the lease authorized Santa Clara to exercise dominion and control over Akin's personal property. Although Santa Clara did not convert the personal property by seizing the property pursuant to the terms of the lease agreement, the actions by Santa Clara subsequent to that seizure must also be examined.

■■■ Santa Clara initially disposed of the perishable items that remained on the premises by giving them to a food bank. Section 9.504(c) of the Texas Business and Commerce Code recognizes an exception from the usual disposition notification procedure for perishable items. *See* Tex.Bus. & Com. Code Ann. § 9.504(c) (Vernon 1991). In addition, section 9.504 does not restrict

disposition to sale. *See* Tex.Bus. & Com. Code Ann. § 9.504(a) (Vernon 1991). Any type of disposition is permissible if it is commercially reasonable. *See id.* No evidence was presented that Santa Clara's disposition of the perishables by giving them away to a food bank before they spoiled was commercially unreasonable.

■■■ Akin also complains that a conversion occurred when Santa Clara sold items of personal property without proper notice. Ghawi testified that there were some nonperishable food items left on the shelf. Ghawi testified that some of this food had "gone bad. [She] opened some of the cookies and they had molded. So those were thrown away. Then [they] sold the items that were good to a company." Ghawi admitted that Akin was not given notice of Santa Clara's intent to sell these items. Although Ghawi testified that these items were "nonperishable food items," the jury could have believed that the items were in fact perishable given that a portion of the items had already "gone bad" or "molded." In that case, the usual disposition notification procedures would not apply, and selling the items in the most expedient manner would be commercially reasonable. Since the sale of the items was commercially reasonable, the items were not converted.

Akin further contends that Santa Clara was liable for conversion based on its failure to return items of "exempt" property not subject to its lien after litigation was instituted. Akin provided no record cites to support this contention, and we were unable to locate any evidence that Akin requested the return of specific items based on a statutory "exemption." *See* Tex.R.App.P. 38.1(h) (argument must be supported by record citations).

■■■ Finally, Akin contends that Santa Clara converted certain property by permitting a subsequent restaurant tenant to use the property prior to the foreclosure sale. Ghawi and Weston admitted that the subsequent restaurant tenant, Pistachios,

had been permitted to use certain items of personal property. In *Johnson v. Lane,* the court of appeals held that property had been converted when a portion of the tenant's furniture was used by the landlord in the office of his business. 524 S.W.2d 361, 364 (Tex.Civ.App.-Dallas 1975, no writ); *see also Moon v. City of Port Arthur,* 745 S.W.2d 92, 94 (Tex.App.—Beaumont 1988, no writ) (property must be held subject to tenant's order). Since conversion can be established by a landlord's use of the personal property being held subject to foreclosure, it would follow that a conversion occurred based on Santa Clara's permitted use of the personal property by Pistachios. There is no evidence that such a conversion did not occur because Santa Clara's representatives, Ghawi and Weston, admitted that Pistachios was permitted to use the property prior to the foreclosure sale.

■ Assuming that the evidence was insufficient to support the jury's failure to find conversion based on Pistachios use of the property, we conclude that Akin was not damaged as a matter of law. Only two bids were received after the notice of sale. Santa Clara's bid, which was the highest, was the same amount Santa Clara had offered to pay Akin for the personal property shortly after the premises was secured. The use of the personal property by Pistachios did not decrease the amount that Santa Clara was willing to pay. Therefore, Akin was not damaged by Pistachios use of the personal property as a matter of law.

Akin's eighth and ninth points of error are overruled.

## JURY CHARGE

In her tenth point of error, Akin complains that the trial court erred in omitting her proposed jury questions and definitions. Akin's proposed jury question number 3 related to the submission of her conversion claim. Akin's proposed jury question numbers 7 and 8 relate to the recovery of damages.

■ The standard of review for an alleged error in the jury charge is abuse of discretion. *See Louisiana–Pacific Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex. 1998); *Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). An abuse of discretion occurs when the trial court acts without reference to any guiding principle. *See id.* In this case, because Akin complains that the trial court erred in not submitting her requested questions and instructions, we must determine whether Akin's requests were reasonably necessary to enable the jury to render a proper verdict. *See* Tex.R.Civ.P. 277; *General Resources Organization, Inc. v. Deadman,* 907 S.W.2d 22, 30 (Tex.App.—San Antonio 1995, writ denied). Error in the charge is reversible only if harmful, that is, if it caused or was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* Tex.R.App.P. 44.1(a)(1); *Kajima Int'l, Inc. v. Formosa Plastics Corp., USA,* 15 S.W.3d 289, 292 (Tex.App.—Corpus Christi 2000, pet. filed).

■ As previously noted, conversion is established by proving: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property. *Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d at 707. The question submitted to the jury contained each of the elements of the conversion claim as follows:

Did Santa Clara convert the personal property of Akin?

Santa Clara converted Akin's personal property if:

a. Akin owned, had legal possession of, or was entitled to possession of the property;

b. Santa Clara unlawfully assumed dominion and control over Akin's property to the exclusion of and inconsistent with Akin's rights;

c. Akin made a demand for the property; and

d. Santa Clara refused to return the property.

Akin's proposed instruction would have further informed the jury that a manual taking was not required to find conversion and that the failure to conduct a 9.504 sale within a commercially reasonable time subjects a landlord to liability for conversion. While these additional instructions might have been helpful to Akin, parties are not entitled to have every single statement of law which might be helpful to their case submitted to the jury as an instruction or definition. *See General Resources Organization, Inc. v. Deadman,* 907 S.W.2d at 30. The question submitted to the jury properly instructed the jury regarding the law of conversion, and Akin's requests were not reasonably necessary to enable the jury to render a proper verdict. *See* TEX.R.CIV.P. 277. The trial court did not abuse its discretion in denying Akin's proposed jury question number 3.

Akin's remaining complaints relate to the trial court's denial of Akin's proposed jury questions relating to damages. Since the jury failed to find that Santa Clara was liable under either theory presented to the jury, the jury never reached the issue of damages. Akin cannot show that she was harmed by the trial court's refusal of her questions relating to damages. *See* TEX. R.APP.P. 44.1(a)(1); *Kajima Int'l., Inc. v. Formosa Plastics Corp., USA,* 15 S.W.3d at 292.

Akin's tenth point of error is overruled.

### CONCLUSION

The trial court's judgment is affirmed.